IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| GREYSTONE SERVICING CORPORATION, INC. and SOUTH SIDE PLAZA 455 LTD, LLP, | § § § § § | CIVIL ACTION NO. 3:06-CV-0575-P |
| Defendants/Third-Party Plaintiffs, | § § | |
| v. | § § | |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and GOVERNMENT NATIONAL MORTGAGE ASSOCIATION, | § § § § § | |
| Third-Party Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is Third-Party Defendants' Motion to Dismiss Third-Party Complaint ("Motion to Dismiss"), filed January 7, 2008. After careful consideration of the Parties' briefing and the applicable law, the Court hereby GRANTS the Motion to Dismiss.

Defendant South Side Plaza 455 Ltd., LLP ("South Side") is the owner of a real estate property known as South Side on Lamar (the "Property") in Dallas, Texas. (Compl. ¶ 7.) In June 1999, South Side financed the construction and initial operation of the Property with the proceeds from a $64 million loan (the "Loan") from Reilly Mortgage Group, Inc. ("Reilly"). (Compl. ¶ 8.)

1

The Loan was to mature on July 1, 2042, carried an interest rate of 7.75%, and was secured by a mortgage on the Property. (Compl. ¶ 8.) Third-Party Defendant, the United States Department of Housing and Urban Development ("HUD"), insured the repayment of the Loan. (Compl. ¶ 9.)

The Loan Agreement contained a provision that prohibited South Side from prepaying the Loan in whole or in part prior to May 2012 ("Prepayment Provision"). (Compl. ¶ 11.) The Loan Agreement also included an exception to the Prepayment Provision that allowed prepayment in the event that HUD determined that prepayment would avoid a mortgage insurance claim and was in the best interests of the federal government.

In order to obtain funding for the Loan, Reilly issued a security (the "Security") backed by the Loan and guaranteed by Third-Party Defendant, the Government National Mortgage Association ("Ginnie Mae"). (Compl. ¶ 14.) Ginnie Mae is a government corporation within HUD established to guarantee mortgage-backed securities.

Plaintiff Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Plaintiff" or "Merrill") purchased the Security in July 2002, divided the Security into two equal shares, and conveyed the Security to two different trusts organized as Real Estate Mortgage Investment Conduits ("REMICs"). (Compl. ¶ 18.) According to the Complaint, in late 2002-early 2003, South Side represented to Merrill that the Property was financially sound. Merrill then acquired unique interests in the REMICs, which are referred to as "IO Strips," pursuant to which Merrill was to receive periodic payments of interest only, consisting in part of interest paid on the Loan. (Compl. ¶ 18.) Merrill alleges that it would not have purchased its interests in the REMICs had South Side not confirmed the Property's financial viability. (Compl. ¶ 19.)

Plaintiff contends that after it purchased its interests in the REMICs, Defendant/Third-Party Plaintiff Greystone Servicing Corporation, Inc. ("Greystone") and Defendant South Side (collectively, "Defendants") conspired to circumvent the Prepayment Provision, refinance the Loan at a lower interest rate, cause HUD to reinsure the refinanced loan, and sell a new security to a new investor at a substantial profit. (Compl. ¶¶ 21-30.) In order to persuade HUD to waive the Prepayment Provision and to complete their scheme, Merrill alleges that Defendants misrepresented to HUD that the financial viability of the Property and South Side's ability to repay the Loan were in jeopardy. (Compl. ¶¶ 25-26.) Merrill contends that Greystone's profits (in the amount of $7.2 million) came at the expense of the Security owners and the holders of the IO Strips (in the amount of $12 million) who are suing to recover their losses. (Compl. ¶¶ 21-28, 44, 47.)

Greystone filed a Third-Party Complaint against HUD and Ginnie Mae on November 2, 2007 seeking a "declaratory judgment that HUD's issuance of the lock-out override is a final, non-reviewable decision which cannot be collaterally attacked by Merrill Lynch in this or any other action." (Third-Party Compl. ¶ 30.) Greystone also alleges it is entitled to a declaration that its "actions with respect to the Loan were entirely lawful and in compliance with its rights and duties under its agreements with, and all applicable rules and regulations of, the Third Party Defendants." (*Id.*) Finally, Greystone seeks a declaration that it is "not a party to the Administration Contract with either of the REMICs." (*Id.*)

HUD and Ginnie Mae (collectively, "Third-Party Defendants") move to dismiss Greystone's Third-Party Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

**DISCUSSION**

In its Third-Party Complaint, Greystone contends that HUD and Ginnie Mae could be liable to Merrill Lynch "to the extent Merrill Lynch claims that the Third Party Defendants' contracts, rules, regulations, policies, and procedures are unsound or that Third-Party Defendants lacked the experience, sophistication, staffing, or expertise to enforce their contracts, rules, regulations, policies, and procedures." (Third-Party Compl. ¶ 24.) Greystone supports this allegation with the deposition testimony of a Merrill Lynch employee who said that HUD is a "'very bureaucratic, understaffed, and inappropriate loan servicer,' without the necessary 'experience or the knowledge base to be what in fact - what we would call - what we call a special servicer.'" (Third-Party Compl. ¶ 20.)

The Third-Party Defendants argue that Greystone's Third-Party Complaint should be dismissed because it does not present a case or controversy within the meaning of Article III of the Constitution. Article III of the Constitution limits the jurisdiction of federal courts by empowering them to decide only actual "cases" or "controversies." U.S. Const. art. III § 2. A "core component" of Article III's case-or-controversy requirement is the doctrine of standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). In order to have standing to sue in the federal courts, a plaintiff must allege (1) an injury in fact that is (2) fairly traceable to the defendant's unlawful conduct and (3) that is likely to be redressed by the requested relief. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

Greystone argues that it has suffered a personal injury because it may be found liable to Merrill Lynch in the original lawsuit. (Resp. at 12.) It further contends that this injury is traceable to Third-Party Defendants because it is "easily traceable to action required or permitted by the

4

applicable contracts, rules, regulations, and guidelines of Third Party Defendants." (Resp. at 12.) Moreover, the "very approval and actions required or permitted by the applicable contracts, rules, regulations, and guidelines of Third Party Defendants" caused such liability and therefore, the Third Party Defendants should be held liable to Greystone. (Resp. at 12.)

Assuming *arguendo* that Greystone's potential liability to Merrill Lynch meets the standing requirement of an "injury-in-fact," there is no allegation in either the Third-Party Complaint or the Complaint that HUD or Ginnie Mae engaged in any unlawful conduct that caused an injury to Greystone. Merrill Lynch accuses Greystone of conspiring with South Side to mislead and defraud HUD, or as Greystone puts it, Merrill Lynch alleges that "Greystone duped HUD into issuing the lock-out override based on a contrived default." (Third-Party Compl. ¶ 20.) No where has any one argued that HUD or Ginnie Mae engaged in any conduct other than that permitted or required by its own rules and regulations.

Therefore, for the reasons stated herein, the Court hereby GRANTS the Third-Party Defendants' motion to dismiss for lack of standing.

It is SO ORDERED, this 13th day of March 2008.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE